**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linderoth Associates, Architects Inc., an Arizona corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Amberwood Development, Inc., an Arizona corporation; Silverado at Spectrum Development LLC, an Arizona limited liability company; Dominionrock Plancor LLC, an Arizona limited liability company; Autowind Management LLC, an Arizona limited liability company; Roll Tide L.P., an Arizona limited partnership; Billy G. Johnson; Jane Doe Johnson; The Ann/Billy Johnson revocable trust; Megan L. Johnson,<br><br>Defendants. | No. CV 06-00426-PHX-NVW<br><br>**ORDER** |

Pending before the court is Defendant Amberwood's Motion for Summary Judgment Regarding Laches (Doc. # 87).

**I.     Background**

The facts relevant to the motion are not materially disputed. As set forth in previous orders, Plaintiff Linderoth Associates, Architects, Inc. ("Linderoth"), is an Arizona corporation that creates residential architectural designs. Defendants consist primarily of a network of interrelated business entities that design and construct residential dwellings. Linderoth alleges that Defendants directly infringed its copyrights in various architectural

1 designs and that Defendant Billy G. Johnson, the president of Defendant Amberwood
2 Development, Inc. ("Amberwood"), and principal executive in each of the remaining
3 defendant entities, is vicariously liable for that infringement. The designs relevant to this
4 order have been utilized by Amberwood in a series of "Model 3739" and "Model 2855"
5 homes in the Silverado at Spectrum housing development in Mesa, Arizona.

6 On January 4, 2005, Linderoth's counsel hand-delivered a letter to Billy Johnson that
7 accused Amberwood of copyright infringement in connection with the Model 3739 and
8 Model 2855 designs. Doc. # 88, Exh. 1 at 2. The letter stated that although there was ample
9 evidence of willful infringement, Linderoth would likely be willing to forego litigation if
10 Amberwood agreed to discuss an "amicable resolution in good faith" and "direct [its] people
11 to provide full and prompt disclosure" of any information necessary to "calculate a
12 reasonable, fair settlement." *Id.* The letter also stated that Linderoth would bring suit in
13 federal court if Amberwood did not express an interest in settlement by January 24, 2005.

14 After Amberwood apparently responded by denying liability, counsel for Linderoth
15 sent another letter on April 12, 2005. Enclosed with this correspondence was a draft of the
16 complaint that Linderoth intended to file in the event that settlement was not reached.
17 Linderoth repeated that it had extensive evidence of infringement. The company also
18 indicated that a resolution of the dispute would require the following:

> (i) an acceptable settlement payment by Amberwood in an amount to be negotiated (ii) an acknowledgment by Amberwood of [Linderoth's] copyright rights in its architectural works, and (iii) an agreement not to rely on any copied plans for any construction going forward unless payment has been made as to use of such plans and (iv) an agreement to cease all further copying of Linderoth works.

23 Doc. # 103, Exh. 2 at 3. The letter closed by indicating that Linderoth expected to hear back
24 from Amberwood by April 20, 2005. The April 20 deadline was subsequently extended to
25 May 17 of the same year.

26 Amberwood responded in an email dated May 17. The company denied liability and
27 declined to offer money damages, but conceded that it "will no longer use" Model 3739 at
28 any of its developments in order to assuage Linderoth's concerns. Doc. # 88, Exh. 2 at 1.

At the close of the email, Amberwood's counsel stated, "Let me know how you are going to proceed." *Id.*

Linderoth did not respond to the May 17 email. By the time it was sent, all of the contracts for the Model 3739 homes in the Silverado development had been signed for at least six months, and construction was in most cases complete. Even with regard to the minority of homes that were not fully constructed by May 17, plumbing and other major work such as the placement of concrete slabs, walls, roof trusses, and roofs was finished.

The Complaint was filed on February 10, 2006. Amberwood now moves for summary judgment on the basis of laches.

## II.  Standard of Review

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory and speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however, depending on whether the movant or the non-movant would bear the burden of persuasion

1 at trial with respect to the issue at hand. If the burden of persuasion at trial would be on the 2 party moving for summary judgment, that party may satisfy its initial burden of production 3 only by showing that it would be "entitle[d] . . . to a directed verdict if the evidence went 4 uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *cf. Berry* 5 *v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) ("A directed verdict is proper when the 6 evidence permits only one reasonable conclusion.").

7 Where the moving party has met its initial burden with a properly supported motion, 8 the party opposing the motion "may not rest upon the mere allegations or denials of his 9 pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." 10 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). Summary judgment is 11 appropriate against a party who "fails to make a sufficient showing to establish the existence 12 of an element essential to that party's case, and on which that party will bear the burden of 13 proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Matsushita Elec. Indus. Co. v. Zenith Radio* 14 *Corp.*, 475 U.S. 574, 586, (1986) (nonmovant's showing of "some metaphysical doubt" as 15 to material facts insufficient); *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th 16 Cir. 1994). Summary judgment is not appropriate when the nonmoving party identifies or 17 produces evidence from which a reasonable juror, drawing all inferences in favor of the 18 nonmoving party, could return a verdict in the nonmoving party's favor. *United States v.* 19 *Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999).

20 **III. Analysis**

21 "Laches is an equitable time limitation on a party's right to bring suit." *Kling v.* 22 *Hallmark Cards Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000). The defense bars claims for 23 equitable relief upon proof of "[1] unreasonable delay by the plaintiff and [2] prejudice" to 24 the defendant. *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). In the 25 context of actions for copyright infringement, "the relevant delay is the period from when 26 the plaintiff knew (or should have known) of the allegedly infringing conduct, until the 27 initiation of the lawsuit in which the defendant seeks to counterpose the laches defense." 28 *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952 (9th Cir. 2001). Whether delay is

unreasonable is determined in reference to its cause. *Id.* at 954. Delay is generally permissible if it was "necessitated by the exhaustion of [administrative] remedies," "used to evaluate and prepare a complicated claim," or used to "determine whether the scope of [a perceived] infringement will justify the cost of litigation." *Id.* By contrast, "delay is impermissible when its purpose [was] to capitalize on the value of the alleged infringer's labor." *Id.*

Amberwood contends that Linderoth's claim for damages is precluded by the doctrine of laches because Linderoth waited approximately nine months to file its action for infringement after receiving the May 17 email. The Motion asserts that it would be inequitable now to permit Linderoth to seek damages because Linderoth strategically delayed the filing of the Complaint simply in order to gauge whether Amberwood's use of the architectural designs would produce a profit that could be recovered through litigation, and Amberwood would not have continued to utilize the disputed designs if Linderoth had not "acquiesced" by ceasing further settlement negotiations.

The Motion for Summary Judgment is easily denied. First, Plaintiff's delay was not unreasonable. The parties agree that Linderoth learned of the infringing conduct as early as December 2004. Because the Complaint was filed in February 2006, the relevant period of delay is approximately fourteen months. Although there is no bright-line rule concerning the specific point at which delay will become impermissibly lengthy, even a delay of two years is generally viewed as insufficient for laches. *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 942 (7th Cir. 1989); 3-12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.06(B)(2), at 12-149 (2006). The cases cited by the parties are consistent with this view. *See Danjaq LLC*, 263 F.3d at 952 (involving delay ranging from nineteen to thirty-six years); *Jackson v. Hoyt Axton*, 25 F.3d 884, 889 (9th Cir. 1994) (involving delay of approximately nineteen years).

Plaintiff's delay is particularly reasonable when one considers that a significant portion of it was devoted to settlement negotiations. Linderoth made clear on January 4, 2005, that it would pursue litigation if Amberwood did not express interest in a fair

- 5 -

1  settlement, including monetary compensation, by January 24, 2005. The January 24 deadline
2  was subsequently extended to May 17, 2005, at Amberwood's request. Amberwood then
3  conceded on May 17 that it "will no longer use" Model 3739 at any of its developments.
4  Doc. # 88, Exh. 2 at 1. The lawsuit was filed approximately nine months later, hardly an
5  excessively lengthy period in which to determine that Amberwood's concession was
6  insufficient, carefully consider legal options, and prepare and file a case. Defendant does not
7  proffer any evidence that the delay was a product of impropriety.

8  Even assuming that Plaintiff's delay was unreasonable, there is no evidence that it
9  caused prejudice to Amberwood. The last contract for a Model 3739 home was signed in
10 October 2004. By the time Amberwood sent its May 17 letter, the homes using the disputed
11 designs were already complete or nearly complete. The notion that Amberwood made
12 construction outlays in reliance on Linderoth's "acquiescence" is therefore chronologically
13 incoherent. Amberwood does not identify any specific prejudice suffered after May 17 as
14 a result of Linderoth's delay.

15 Even if Amberwood suffered some residual prejudice after May 17, that prejudice
16 occurred most proximally as a result of Amberwood's unreasonable view that Linderoth had
17 acquiesced to the infringing use. The letters from January 4 and April 12, 2005, could hardly
18 have been clearer in expressing Linderoth's objection to Amberwood's use of the
19 architectural designs. Both of those documents indicated that Linderoth possessed significant
20 business interests in its intellectual property rights and intended to protect them.
21 Amberwood's limited concession to cease using Model 3739 obviously fell far short of
22 Linderoth's demands, which concerned multiple models and included monetary
23 compensation. It is, to put it mildly, unreasonable to think that Linderoth "acquiesced" to
24 the unauthorized use of its intellectual property by a business competitor simply because
25 Linderoth failed to respond immediately to that competitor's unsatisfactory settlement offer.

1  IT IS THEREFORE ORDERED that the Motion for Summary Judgment Regarding
2 Laches (Doc. # 87) is DENIED.
3  DATED this 12th day of September 2007.

　　　　　　　　　　　　　　　　　　　　／s／ Neil V. Wake
　　　　　　　　　　　　　　　　　　　　Neil V. Wake
　　　　　　　　　　　　　　　　　　　　United States District Judge