1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Linderoth Associates, Architects Inc., an)   No. CV 06-00426-PHX-NVW
    Arizona corporation,                      )
10                                            )   **ORDER**
                       Plaintiff,             )
11                                            )
    vs.                                       )
12                                            )
                                              )
13  Amberwood   Development,   Inc.,   an)
    Arizona   corporation;   Silverado   at)
14  Spectrum Development LLC, an Arizona)
    limited liability company; Dominionrock)
15  Plancor LLC, an Arizona limited liability)
    company; Autowind Management LLC, an)
16  Arizona limited liability company; Roll)
    Tide L.P., an Arizona limited partnership;)
17  Billy G. Johnson; Jane Doe Johnson; The)
    Ann/Billy Johnson revocable trust; Megan)
18  L. Johnson,                               )
                                              )
19                     Defendants.            )
                                              )
20  _____  )

21          Pending before the court is Plaintiff's Motion for Partial Summary Judgment of

22  Copyright Validity (Doc. # 89) and Defendant's Motion for Partial Summary Judgment Re

23  Common Elements of Plans 2855 and 2843 (Doc. #93).

24  **I.     Background**

25          Plaintiff Linderoth Associates, Architects, Inc. ("Linderoth"), is an Arizona

26  corporation that creates residential architectural designs.  The process Linderoth uses to

27  create its designs typically begins when a developer approaches the company with particular

28  criteria in mind for a residential housing project.  The criteria are usually general and pertain

1  to issues such as square footage, the desired number of bedrooms, and the number of

2  different floor plans to be created.  Linderoth claims it uses the client's criteria to design floor

3  plans from scratch, without copying from its previous designs or the designs of others (Doc.

4  #107-2 at 4; Doc #90-2 ¶ 5, 9).  Once Linderoth has created a draft of the plans, the client is

5  given an opportunity to review them and request changes.  Linderoth then turns the plans into

6  a set of construction documents.  (Doc #90-2 ¶ 6, 7).

7       In addition to the criteria provided by clients,  a variety of artistic and practical

8  considerations shape Linderoth's designs.  Artistically, Linderoth's architects receive design

9  insights from their prior experience and knowledge of other Linderoth works.  At times they

10  tour model homes and pick up informational brochures depicting floor plans and other design

11  characteristics.  They may also reference Linderoth's library of architectural design books

12  or the website Designlens.com to better understand particular construction styles.  (Doc.

13  #107-2 at 4–6).

14       Practical considerations also shape Linderoth's designs, such as the size of the lots on

15  which the homes are to be built, zoning requirements, and a desire to create an arrangement

16  of architectural features that is convenient and functional for future residents.  For example,

17  local ordinances might limit the maximum size of the garage relative to the house, require

18  that the house be set back a certain distance from the road, or mandate covered porches.  (*Id.*

19  at 6–8).

20       In mid-2000 and mid-2002 respectively, Linderoth began to create its Plan 6 and Plan

21  2651 using this design process.  (Doc #90-2 ¶ 3, 8).  It obtained certificates of copyright

22  registration for these two completed plans on February 22, 2005 and September 5, 2006

23  respectively.  (Doc #90-3 at 4–5, 7–8).  Construction on the Plan 2651 model home began

24  in January, 2003.  (Doc. #94 ¶ 5).  While the final completion date of the Plan 2651 model

25  remains in dispute, it is undisputed that it underwent a city inspection on July 1, 2003 (*Id.* at

26  ¶ 7; Doc #104-2 ¶ 7).

27       At some unknown time, Defendant Amberwood Development, Inc. ("Amberwood")

28  also created an architectural plan for a house that it designated Plan 2855, the design and

construction of which Linderoth asserts infringes its copyrights.  Amberwood claims that Plan 2855 is a modification of its Plan 2843, which it began designing on March 31, 2003 and completed on June 9, 2003.  (Doc. #94 ¶ 3, 4; Doc. #95 at 5–8).  It is undisputed that Plans 2855 and 2843 have many common elements.  (Doc. #94 ¶ 2; Doc. #104-2 ¶ 2). Specifically, the back end of the house designs have much in common.  Both designs align the master bedroom, master bathroom, and a walk-in closet along the left-hand sides of the houses.  Three smaller bedrooms that share a bathroom align to form the right-hand sides of the houses.  A rectangular space lies between the left-hand and right-hand portions of the houses.  This area encloses the family room, nook and island kitchen, and opens onto a covered patio in the back. (Doc. #95 at 2–3).

Plaintiff Linderoth's motion currently before the court asks the court to declare, as a matter of law, that Linderoth owns valid copyrights in its Plan 6 and Plan 2651.  In opposition, Defendant Amberwood argues that Linderoth's plans lack the requisite originality and creativity to be copyrightable. Specifically, Amberwood argues that Linderoth's copyrighted plans are substantially similar to plans for five other styles of homes in Maricopa County to which Linderoth had access. (Doc. #107-2 at 27–34). Defendant Amberwood also moves for partial summary judgment that the elements common to Plan 2843 and Plan 2855 cannot have been copied from Linderoth's Plan 2651.  Amberwood claims that it created Plan 2843 prior to the very first date it potentially had access to the design of Linderoth's Plan 2651.

## II.   Evidentiary Issues

In its Separate Statement of Facts in Support of its Motion for Summary Judgment Re: Plan 2855, Defendant Amberwood proffered computer printouts purporting to demonstrate the date that it began and finished creating its Plan 2843.  (Doc. #95 at 5–8).  Plaintiff objected that this evidence was not properly authenticated and the court granted leave to Amberwood to supply authenticating evidence in its reply.  Amberwood then filed with the court the Affidavit of Marc Nassos, Amberwood's Vice President, which stated that he had verified the creation and completion dates in Amberwood's computer records.  (Doc. #113

at 2–3).  Linderoth further objected that Mr. Nassos lacked personal knowledge of 1) the actual creation and completion of the proffered files, and 2) how the computer tracks the creation and completion dates for the files and whether the system maintained accurate dates.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901.  With respect to computer business records, it is not necessary that the person authenticating the record have technical knowledge of how the computer functions, nor is it necessary that the authenticator be the one who created the file.  It is sufficient if the person authenticating the records has personal knowledge of the record system and is the custodian of the record in question itself.  *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985).  In his affidavit, Mr. Nassos swore that he "assist[s] with the management of the electronic storage of [Amberwood's] files, including AutoCad files for floor plans and drawings," that he understood that "Amberwood's AutoCad database recorded the start and modification dates" for the Plan 2843 file, and that he had personally reviewed the file and verified that its creation date was March 31, 2003 and its last modified or completed date was June 9, 2003.  (Doc. #113 at 2–3).  Amberwood has therefore properly authenticated its computer records and the court overrules Linderoth's objection to that evidence.

**III.    Standard of Review**

Rule 56(c), Fed. R. Civ. P., provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A "genuine issue" of material fact will be absent if, "viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law."  *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory and speculative

1   testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

2   to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738

3   (9th Cir. 1979).

4   　　　　The party seeking summary judgment bears the initial burden of informing the court

5   of the basis for its motion and identifying those portions of the pleadings, depositions,

6   answers to interrogatories, and admissions on file, together with the affidavits, if any, which

7   it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp.*

8   *v. Catrett*, 477 U.S. 317, 323 (1986). The nature of this responsibility varies, however,

9   depending on whether the movant or the non-movant would bear the burden of persuasion

10  at trial with respect to the issue at hand. If the burden of persuasion at trial would be on the

11  party moving for summary judgment, that party may satisfy its initial burden of production

12  only by showing that it would be "entitle[d] . . . to a directed verdict if the evidence went

13  uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (citing *Int'l*

14  *Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991)); *cf. Berry v. Bunnell*,

15  39 F.3d 1056, 1057 (9th Cir. 1994) (citing *Zamalloa v. Hart*, 31 F.3d 911, 913 (9th Cir.

16  1994)) ("A directed verdict is proper when the evidence permits only one reasonable

17  conclusion.").

18  　　　　On issues where the nonmoving party will have the burden of proof at trial, the

19  moving party may meet its burden by showing that there is an "absence of evidence" to

20  support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. The nonmoving party

21  then must designate specific facts showing that there is a genuine issue for trial. *See id.* at

22  324. Summary judgment is appropriate against a party who "fails to make a showing

23  sufficient to establish the existence of an element essential to that party's case, and on which

24  that party will bear the burden of proof at trial." *Id.* at 322; *Matsushita Elec. Indus. Co. v.*

25  *Zenith Radio Corp.*, 475 U.S. 574, 586, (1986) (nonmovant's showing of "some

26  metaphysical doubt" as to material facts insufficient); *see also Citadel Holding Corp. v.*

27  *Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

28

1    Where the party bearing the burden of proof at trial has satisfied its evidentiary

2   burden, the opposing party "may not rest upon the mere allegations or denials of his pleading,

3   but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*

4   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985).  Summary judgment is not appropriate

5   when the opposing party identifies or produces evidence from which a reasonable juror could

6   return a verdict in the opposing party's favor.  *United States v. Shumway*, 199 F.3d 1093,

7   1103-04 (9th Cir. 1999).

8   **IV.   Analysis**

9    To establish a prima facie case of direct infringement of a copyrighted work under 17

10  U.S.C. § 501, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of

11  constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entm't*

12  *Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (citing *Feist Pubs., Inc. v. Rural Tel. Serv.*

13  *Co.*, 499 U.S. 340, 361, (1991)).  With respect to the first element, copyright protection may

14  extend to an "architectural work[]," 17 U.S.C. § 102(a)(8), which is defined as "the design

15  of a building as embodied in any tangible medium of expression, including a building,

16  architectural plans, or drawings," 17 U.S.C. § 101.  *See Hunt v. Pasternack*, 192 F.3d 877,

17  880 (9th Cir. 1999).  Ownership of a valid copyright is presumptively satisfied by a

18  certificate of copyright registration filed prior to or within five years after first publication

19  of the disputed work.  17 U.S.C. § 401(c); *North Coast Indust. v. Jason Maxwell, Inc.,* 972

20  F.2d 1031, 1033 (9th Cir. 1992) (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085-86

21  (9th Cir. 1989)).  A certificate of registration "shifts to the defendants the burden to prove

22  the invalidity of the plaintiff's copyrights." *Entm't Research Group, Inc. v. Genesis Creative*

23  *Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).  Because copyright protection only

24  subsists in "original works of authorship," 17 U.S.C. § 102(a), the defendant may satisfy his

25  burden by providing evidence that the disputed work is not original.  *North Coast Indust.,*

26  972 F.2d at 1033.

27    "The originality necessary to support a copyright for an architectural work is that

28  originality required to protect any other work–honest and independent creation, not pristine

1   novelty demonstrable against the balance of architectural experience." *Arthur Rutenberg*

2   *Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1566 (M.D. Fla. 1995).  That an architectural

3   work is original "means only that the work was independently created by the author (as

4   opposed to copied from other works), and that it possesses at least some minimal degree of

5   creativity." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  To

6   overcome the presumption of validity for a given architectural copyright, defendant must

7   therefore show that the plaintiff copied from another's work.  Such a showing ordinarily

8   proceeds in the same manner in which the plaintiff proves copying for the purposes of

9   infringement.  *North Coast Indust.*, 972 F.2d at 1033.

10       To prove copying of a valid copyright that the plaintiff owns, the plaintiff may provide

11   either direct evidence of copying, or evidence that the defendant both (1) had access to the

12   copyrighted work and (2) produced a work of its own that is "substantially similar" to the

13   protected elements of the copyrighted work.  *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir.

14   2004) (citing *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Metcalf v. Bochco*, 294

15   F.3d 1069, 1072 (9th Cir. 2002)).  "Access" is defined as "an opportunity to view or copy

16   plaintiff's work."  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000)

17   (citing *Sid and Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157,

18   1172 (9th Cir. 1977)).  Substantial similarity is in turn determined by its own two-part test:

19   First, an "extrinsic test" considers "whether two works share a similarity of ideas and

20   expression based on external, objective criteria." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th

21   Cir. 1996), *superseded on other grounds*, *see Stewart v. Wachowski*, 2004 U.S. Dist. LEXIS

22   26608, at *11 (C.D. Cal. Sept. 28, 2004) (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35

23   F.3d 1435, 1442 (9th Cir. 1994); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir. 1990)).

24   Second, if the plaintiff satisfies the extrinsic test, an "intrinsic test" is employed to determine

25   whether an "ordinary, reasonable observer" would find a substantial similarity.  *Id.*

26       **A.  Copyrightability of Plan 6 and Plan 2651**

27       Plaintiff Linderoth has produced certificates of copyright registration for both Plan

28   6 and Plan 2651 and Defendant Amberwood has not contested their validity.  Linderoth is

therefore entitled to a presumption that it owns valid copyrights in its Plan 6 and Plan 2651 and Amberwood has the burden to come forward with evidence that the plans do not possess the requisite originality or creativity to be copyrightable.  Amberwood has placed into the record five floor plans that exist in Maricopa County and Linderoth admits that its designers tour and reference brochures of its competitors homes as part of their design process. Amberwood has therefore established that Linderoth had an "opportunity to view or copy" the five prior architectural works and it argues that they are substantially similar to Linderoth's copyrighted designs.  *Three Boys Music Corp.,* 212 F.3d at 482.  Although Linderoth maintains that it designed its Plan 6 and Plan 2651 from scratch, without copying any other floor plan, the differences between the prior architectural works and plaintiffs works are not so trivial that it would be unreasonable for a trier-of-fact to conclude that they are substantially similar.  *North Coast Indust.,* 972 F.2d at 1033-35.  Therefore, Amberwood's evidence creates a question of fact as to the originality of Linderoth's designs that the jury must resolve and the court denies Linderoth's motion.

### B. Elements common to Plans 2843 and 2855

Defendant Amberwood's burden on its motion for summary judgment is to demonstrate that Plaintiff Linderoth will be unable to prove its prima facie case for infringement at trial.  Because Linderoth has presented no direct evidence of copying, at trial it must seek to create the inference that Amberwood copied its designs by proving that Amberwood had access to Plan 2651 and that Plan 2855 is substantially similar to Plan 2651. Amberwood argues that no permissible inference of copying can exist with respect to certain elements in Plan 2855 that are also present in its Plan 2843.

Linderoth's model home for Plan 2651 underwent a city inspection in July, 2003, so the model home was not open to the public and Amberwood could not have had access to the design before that date.  Yet before July, 2003 Amberwood had utilized certain elements in the design of its Plan 2843.  Because Amberwood did not yet have access to Plan 2651, it could not have copied those elements from Linderoth to create Plan 2843.  Furthermore, Linderoth does not dispute that many essential elements and much of the configuration of

1  Plan 2843 also later appeared in Amberwood's Plan 2855. More specifically, the court finds

2  that any reasonable jury must find that Amberwood's Plan 2843 and Plan 2855 are materially

3  identical in all elements and configuration beginning at the level of the family room/kitchen,

4  including all adjoining elements to the left and right, and continuing to the back of the house.

5  As to those elements and configuration, the court concludes that the usual circumstantial

6  inference of copying from access and substantial similarity is wholly dispelled by the

7  undisputed fact that Amberwood created its own Plan 2843 before any access to Plan 2651

8  was possible. No reasonable jury could infer that in its Plan 2855 Amberwood copied those

9  elements from Linderoth rather than copying from itself.

10  Whether Amberwood copied other elements (the front of the house) of its Plan 2855

11  from Linderoth's Plan 2651 is not resolved in this motion. However, as to those elements

12  and configuration herein identified as common between Plan 2843 and Plan 2855, the court

13  grants Amberwood's motion for partial summary judgment.

14  IT IS THEREFORE ORDERED Plaintiff's Motion for Partial Summary Judgment of

15  Copyright Validity (Doc. # 89) is denied.

16  IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment

17  Re Common Elements of Plans 2855 and 2843 (Doc. #93) is granted with respect to those

18  elements and configuration that the court finds Plan 2843 and 2855 have in common.

19  DATED this 12th day of September 2007.

20

21  _____

22  Neil V. Wake
   United States District Judge

23

24

25

26

27

28